******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# HEATHER HANDEL, CONSERVATRIX (ESTATE OF ROBERT WOJCIECHOWSKI) *v.* COMMISSIONER OF SOCIAL SERVICES
## (AC 39372)

DiPentima, C. J., and Sheldon and Harper, Js.

*Syllabus*

The plaintiff appealed to the trial court from the decision of an administrative hearing officer for the defendant Commissioner of Social Services upholding the defendant's denial of certain Medicaid benefits. The plaintiff's father had filed an application for Medicaid benefits to cover certain residential care costs at a health care facility, which the defendant denied in part. The plaintiff, who was appointed as the conservatrix for her father, requested that the defendant hold a fair hearing on her challenge to the denial of benefits for three disputed months. A hearing was held before the defendant's hearing officer, who issued a decision concluding that the plaintiff's father was ineligible for benefits for those months. Thereafter, the plaintiff filed an administrative appeal, which the trial court dismissed, and the plaintiff appealed to this court. On appeal, the plaintiff claimed, inter alia, that the defendant's decision was not rendered within ninety days of the date that she requested a fair hearing, as required by statute (§§ 17b-60 and 17b-61) and the applicable federal regulation (42 C.F.R. § 431.244 [f] [2013]), and thus could not stand. *Held* that the plaintiff's administrative appeal from the denial of Medicaid benefits should have been sustained, the defendant having failed to render a decision within ninety days of the date that the plaintiff requested a hearing; it was undisputed that the defendant rendered the decision beyond the statutorily prescribed ninety day time limit, even factoring in a continuance requested by the plaintiff that resulted in the rescheduling of the hearing, our Supreme Court has determined previously that a plaintiff's appeal from a decision of the defendant should be sustained where the final administrative action is not taken within ninety days of the date the plaintiff originally filed a request for a fair hearing unless the delay in the defendant's decision was attributable to the plaintiff, and although the defendant claimed that there have been changes in the language of the federal regulation, 42 C.F.R. § 431.244 (f), under which the plaintiff sought relief and on which that Supreme Court precedent relied, which the defendant claimed evinced an intent to require substantial rather than strict compliance with the ninety day deadline, the new language had to be read in conjunction with a parallel statute, § 17b-61, previously § 17-2b, on which that Supreme Court precedent relied, which still mandates that a decision be rendered within ninety days after the request for a hearing, and, therefore, that case law has not been superseded by the minor change in the language of the federal regulation.

Argued March 19—officially released July 17, 2018

*Procedural History*

Appeal from the decision of the defendant Commissioner of Social Services denying in part an application for Medicaid benefits, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cole-Chu, J.*; judgment dismissing the appeal, from which the plaintiff appealed. *Reversed; judgment directed.*

*Andrew S. Knott*, with whom, on the brief, was *Robert J. Santoro*, for the appellant (plaintiff).

*Patrick Kwanashie*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney gen-

eral, for the appellee (defendant).

*Opinion*

SHELDON, J. The plaintiff, Heather Handel, conservatrix for her father, Robert Wojciechowski (applicant), appeals from the judgment of the trial court affirming the denial of certain Medicaid benefits by the defendant, the Commissioner of Social Services, and dismissing her administrative appeal from that denial. On appeal to this court, the plaintiff claims that she is entitled to the relief requested—Medicaid coverage for a specified period of months—because the decision denying that relief was not issued by the Department of Social Services (department)[1] within the time period mandated by law.[2] We agree and, accordingly, reverse the judgment of the trial court.

The trial court set forth the following relevant factual and procedural history. "On August 2, 2013, the applicant, suffering from a primary diagnosis of dementia, was admitted to Sheriden Woods Health Care Center, a long-term care facility in Bristol, Connecticut. Two days later, with the plaintiff's help he applied for Medicaid for his residential care costs not covered by his Social Security benefits. On August 7, 2013, the plaintiff was appointed to the fiduciary capacity in which she brings this appeal: conservat[rix] of the applicant. Her initial fiduciary certificate did not give her authority to liquidate insurance policies or retirement accounts. On September 16, 2013, the department sent the plaintiff the first of what would eventually be twelve asset verification requests. Each such request informed the plaintiff of the $1600 asset limit for eligibility for the Medicaid benefit applied for. There were only two assets which were not liquidated and spent until June of 2014: a Lincoln Life Insurance account with a cash value of $9315.01 as of June 4, 2014 [insurance policy], and a Fidelity IRA account with a balance of $2187.88 as of June 2, 2014 [IRA].

"In December of 2013, the plaintiff began trying to cash in the insurance policy. On March 14, 2014, after she discovered that Lincoln Life Insurance required specific Probate Court authority to liquidate the insurance policy, the plaintiff asked the Probate Court for authority to liquidate the insurance policy and the IRA. On May 1, 2014, the Probate Court granted the plaintiff that authority. On June 2, 2014, the plaintiff closed the IRA account. On June 4, 2014, the plaintiff liquidated the insurance policy. She promptly applied the proceeds of the IRA and insurance policy to the applicant's debts, thus bringing the applicant's assets under $1600.

"On July 23, 2014, the department granted [the applicant's] application for Medicaid benefits, starting June 1, 2014, and denied benefits for March, April and May, 2014.

"On September 17, 2014, the plaintiff requested that the department hold an administrative hearing on her

challenge to the July 23, 2014 denial of benefits for March, April and May, 2014. On September 30, 2014, the department sent the plaintiff a notice that the requested hearing would take place on October 23, 2014. On October 16, 2014, the plaintiff, by her attorney, asked the department for a postponement of the hearing due to a conflict with a court event. On October 21, 2014, the department sent the plaintiff a notice of rescheduled hearing on November 10, 2014.

"On November 10, 2014, the requested hearing was conducted by the department's hearing officer. At the end of the hearing, the hearing officer left the record open, by agreement, for additional information. The hearing record was announced as closing, and did close, on December 1, 2014. The hearing officer's decision was issued on February 20, 2015, the 81st day after December 1, 2014, and the 127th day after October 16, 2014." (Footnotes omitted.)

The plaintiff filed an administrative appeal, pursuant to General Statutes § 4-183, to the Superior Court from the department's denial of benefits for March, April and May, 2014, on the ground that the department erroneously determined that the life insurance policy and the IRA were assets that were available to the applicant during those months, and thus that he had more than the minimum $1600 worth of assets available to him and was ineligible for Medicaid until those assets were spent down. The plaintiff also argued that her claim for benefits during March, April and May, 2014, should be granted as a matter of law because the decision of the department was impermissibly rendered beyond the ninety day period prescribed by law.

By memorandum of decision filed July 29, 2016,[3] the court rejected both of the plaintiff's arguments and, thus, affirmed the decision of the department and dismissed the plaintiff's appeal therefrom. This appeal followed.

"The [M]edicaid program, established in 1965 as Title XIX of the Social Security Act, and codified at 42 U.S.C. § 1396 et seq., is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of necessary medical care. . . . States participate voluntarily in the [M]edicaid program, but participating states must develop a plan, approved by the [S]ecretary of [H]ealth and [H]uman [S]ervices, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . . Connecticut has elected to participate in the [M]edicaid program and has assigned to the department the task of administering the program. . . . The department, as part of its uniform policy manual, has promulgated regulations governing the administration of Connecticut's [M]edicaid system. See General Statutes § 17b-260." (Internal quotation marks omitted.) *Valliere* v. *Commissioner of*

*Social Services*, 328 Conn. 294, 309–10, 178 A.3d 346 (2018).

"The [M]edicaid act . . . requires participating states to set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. 42 U.S.C. § 1396a (a) (17) [2006] . . . . The resources standard set forth in Connecticut's state [M]edicaid plan for categorically needy and medically needy individuals is $1600. General Statutes §§ 17b-264 and 17b-80 (c); [Dept. of Social Services, Uniform Policy Manual § 4005.10] . . . . Consequently, a person who has available resources; see 42 U.S.C. § 1396a (a) (17) (B) [2006]; in excess of $1600 is not eligible to receive benefits under the Connecticut [M]edicaid program even though the person's medical expenses cause his or her income to fall below the income eligibility standard." (Internal quotation marks omitted.) *Palomba-Bourke* v. *Commissioner of Social Services*, 312 Conn. 196, 205, 92 A.3d 932 (2014).

The plaintiff claims that the department's decision that the applicant was ineligible for benefits for the months of March, April and May, 2014, because his available resources exceeded $1600 during those months, was not rendered within ninety days of the date that she requested a hearing, pursuant to General Statutes § 17b-60, as required by 42 C.F.R. § 431.244 (f) and General Statutes § 17b-61, and thus cannot stand. We agree.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The question of statutory interpretation presented in this case is a question of law subject to plenary review." (Citation omitted; internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014).

Our Supreme Court's decision in *Persico* v. *Maher*, 191 Conn. 384, 465 A.2d 308 (1983), is dispositive of the

plaintiff's claim. In *Persico*, the plaintiff requested a fair hearing, pursuant to General Statutes § 17-2a, now § 17b-60, on her application for Title XIX benefits to cover the costs of her son's orthodontic work. The hearing officer's decision denying the plaintiff's application was rendered more than 136 days after the plaintiff requested the hearing. Our Supreme Court reasoned: "42 U.S.C. § 1396a (a) [1976] requires that '[a] State plan for medical assistance must . . . (3) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness.' 42 C.F.R. § 431.244 (f) [1982] promulgated under title XIX requires that '[t]he agency must take final administrative action within 90 days from the date of the request for a hearing.' General Statutes § 17-2b [now § 17b-61] tracks the federal regulation and provides that 'final definitive administrative action shall be taken by the commissioner or his designee within ninety days after the request of such [fair] hearing pursuant to section 17-2a [now § 17b-60].'

"The lower court based its ruling on *Labbe* v. *Norton*, [United States] District Court, [Docket No. H-136 (D. Conn. November 4, 1974)]. In *Labbe* the court considered a similar ninety day rule; 45 C.F.R. § 205.10 [a] (16) [1974]; to titles I, IV-A, X, XIV and XVI, the Social Security Act, and ordered, except where a petitioner for a fair hearing has requested a delay, or has failed to appear for a scheduled hearing, that the defendant's predecessor 'grant whatever relief is requested in fair hearing requests filed by applicants for and recipients of categorical assistance benefits . . . in whose cases final administrative action is not taken within ninety (90) days of the date they originally filed their request for a fair hearing . . . .' Since *Labbe* was a proper class action, its ruling was held to apply to all applicants for fair hearing.

"We find that the *Labbe* rule applies to the same provision for ninety day administrative adjudication of Medicaid claims found in [42] C.F.R. § 431.244 and in . . . § 17-2b [now § 17b-61], and now before the court." *Persico* v. *Maher*, supra, 191 Conn. 406–407. The court in *Persico* thus concluded that, unless the delay in the department's decision was attributable to the plaintiff—either by the plaintiff filing a request to delay or a failure to appear at the scheduled hearing—the plaintiff's appeal therefrom should have been sustained. Id., 406–408.

Here, it is undisputed that the department rendered its decision beyond the statutorily prescribed ninety day time limit. Even factoring in the short continuance requested by the plaintiff, which resulted in rescheduling the hearing from October 23, 2014, to November 10, 2014, the department's decision was rendered 138 days from the date that the plaintiff requested a hearing.

The department nevertheless challenges the plaintiff's timeliness claim on the ground that there have been changes in the law rendering *Persico* inapposite to the present case.[4] Specifically, the department argues that *Persico* has been superseded by a change in the language of the applicable federal regulation under which the plaintiff sought relief. When *Persico* was decided, 42 C.F.R. § 431.244 (f) (1982) provided that "[t]he agency must take final administrative action within 90 days from the date of the request for a hearing." That language has been amended and, at the time that the plaintiff filed a request for a hearing, it stated that "[t]he agency must take final administrative action . . . [o]*rdinarily*, within 90 days from . . . the date the enrollee filed for . . . a [s]tate fair hearing." (Emphasis added.) 42 C.F.R. § 431.244 (f) (2013). The department argues that the inclusion of the word "ordinarily" "evinces an intent to require substantial rather than strict compliance with its ninety day deadline." (Internal quotation marks omitted.) Although that is one way to interpret the word "ordinarily," that language must be read in conjunction with the parallel state statute, § 17b-61, previously § 17-2b, upon which *Persico* relied in conjunction with 42 C.F.R. § 431.244, which still mandates that a decision be rendered within ninety days after the request for a hearing. We thus conclude that *Persico* has not been superseded by the minor change in the language of 42 C.F.R. § 431.244. Based upon our Supreme Court's reasoning in *Persico*, the plaintiff's appeal from the denial of benefits should have been sustained because the department failed to render its decision within ninety days of the date that the plaintiff requested a hearing.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.

[1] The plaintiff brought this action against the Department of Social Services through its commissioner, Roderick L. Bremby. For ease of reading, references in this opinion to the department include the Commissioner of Social Services.

[2] The plaintiff also challenges the trial court's decision affirming the department's denial of benefits on the ground that the department erroneously concluded that the applicant was ineligible for benefits during the specified period of time because he had more than $1600 worth of assets available to him during that time period. Because we conclude that the department did not issue its decision within the statutorily prescribed time limit, and reverse the decision on that basis, we need not address the plaintiff's claim regarding the applicant's available assets.

[3] On June 15, 2016, the court issued an order dismissing the plaintiff's appeal, indicating that a memorandum of decision would follow.

[4] Much of the department's brief reads as reargument of *Labbe* and *Persico*. Whether those cases properly were decided is beyond the purview of this court.